Good morning, Your Honors. Laurie Walsh for Petitioner Julio Cesar Olivar. I'd like to reserve four minutes for rebuttal. The Court asked the parties to address two issues. First, whether the Board violated the regulation governing its scope of review when it held that Petitioner had failed to establish specific intent, and second, whether remand is appropriate in this case. The answers to those questions are yes, the Board erred when it applied the wrong standard of review, and no, the case should not be remanded for the Board's reconsideration. Recent case law has clarified that specific intent is a finding of fact. In late July, this Court held in VTUG facts include past events, but they are not restricted to historical events. They also include states of mind, such as intentions. Under governing regulations, the Board must review findings of fact for clear error. They did not do so in this case. Facts also include reasonable inferences. In Cole v. Holder, the Court held a credible applicant's facts are deemed true, and the question becomes whether these facts and their reasonable inferences satisfy the elements of the claim for relief. Here, based on unrebutted record evidence, the IJ inferred that the harm in Mexican mental health facilities is specifically intended. This is a finding of fact. Nowhere did the Board state that this inference was clearly erroneous. Instead, the Board substituted its own facts. I think the Board also said that the IJ hadn't applied the proper standard. That the Board said that the Court hadn't? That the immigration judge, in concluding there was specific intent, hadn't applied the proper standard, the standard discussed in our Villegas case. Right. In any case, the? Well, that's not purely a factual determination, is it? If the Board is saying the IJ didn't reach a conclusion, a factual conclusion with regard to specific intent, but reaching that conclusion didn't apply the proper legal standard, how can the Board be faulted for not reviewing the legal standard adopted by the IJ on a clearly erroneous basis? I mean, that's not a clearly erroneous factual question, whether the right legal standard was applied. Well, in RIDORE and also in VTUG, this Court made clear that legal conclusions have factual predicates, and even if specific intent is not? Let's try it this way. Do you think the IJ applied the standard that our Court discussed in Villegas? I think the IJ using, had Villegas in front of her, and she? I don't hear a yes in response to my question. No, I don't believe the judge used the wrong standard over you. I mean, I don't believe the judge found, used the wrong standard. You are saying yes. You think the IJ applied the proper legal standard? I do. I think what she did was she had Villegas in front of her. She had the facts in this case, in the same way as RIDORE and VTUG. She had the facts in front of her, and she distinguished specific intent in Villegas from specific intent in this case. And the reason she found that was because in Villegas, this Court held? Excuse me. She looked at why the Villegas Court had not found specific intent, and she said, she quoted the Court, ?Conditions in the Mexican mental health system exist not out of a deliberate intent to inflict harm but merely because of officials' historical gross negligence and misunderstanding.? Here she found more than gross negligence. She found that the Mexican government had full knowledge of the atrocious conditions in the Mexican mental health institutions. She found that the 2010 DRI, the Disability Rights International Report, had found no change had taken place in Mexico's mental health system. And also she noted that these are government workers in government institutions implementing a policy from above, and that the government affirmatively sanctions these acts. Moreover? Could I ask you about that? I don't know if it's a question of terminology or not, but as I read the IJ, the IJ said in sum what you just pointed out, that the government sanctioned these practices in the institutions. But the question is whether that finding, which is a factual finding, I believe, is actually the same as the specific intent finding. And let's say we agreed with you in part. Let's say we said, well, the BIA was wrong to just tip the IJ without letting, because that is a factual issue, and not remanding it to the IJ to complete the cycle. I'm just having some trouble understanding why what the IJ did actually did meet the standard, but that was compounded by the BIA, at least as my initial review. So I'd appreciate it if you could address that interplay. I think the difference between JE, for example, and VIEGAS in this case, is that on the facts of this case, where it's not just negligence, it's not neglect. These are affirmative actions, the routine use of restraints, the overmedication of patients that causes, you know, disability and death. These are affirmative actions that are being sanctioned by the government, and the healthcare workers in the mental health institutions are agents of the government. I guess that's not really answering my question, because that's exactly what you said a minute ago. My question is really whether the sanctioning is tantamount to a specific intent, or whether there needs to be that finding that the IJ should have made. And we can infer it, but the IJ didn't use those words, specific intent, correct? Actually, she does say that she finds that the harm is specifically intended because of these issues, as she distinguishes those two cases. I think it's JE, in JE, the court brought in criminal law, which, you know, scholars have said was inappropriate, the definition of specific intent. I cite an article, Mary Holper, discussing how the board chose the absolute narrowest definition of that term. And I think our position is that that is a finding of fact that should be reviewed for a clear error. And so I think basically the government kind of wants to have it two ways. They want to have it be a legal conclusion, and they want to say, you know, that has de novo review, and they want to say it's a criminal law term, which would require clear error review. And I think the IJ's conclusion in this case is very similar to the IJ in Riddori, who says... Well, Riddori, you've got affirmative evidence of government motivation, these people die. And there's nothing like that here, is there? I mean, in the Haitian prisons, the victims were arguably identified by the government as enemies, as people they wanted to be rid of. And what suggestion... Everything that I've read here suggests that the Mexican government may know what's going on and has promised to do better, but hasn't, something which governments all over the place do all the time. That's not quite the same thing as saying they had an affirmative desire for these people to suffer. I guess the point is that they're fully aware, they don't do anything to change the situation. Congress is fully aware that public defenders are being laid off, and maybe they'll do something, but if they don't, does that mean they have the intent, or they're out of money? I mean, the Mexican government may simply be out of money. Well, I mean, the U.S., the government introduced evidence labeling Mexico an upper-middle-income country, that's AR at 469, that's very different from the situation in Haiti. I think it's a choice, a sanctioning of the harm. Well, you think it's a choice and a sanctioning, but I'm not sure, I mean, that's... Now, I sit here and I look at this case and the IJ is aware of the Villegas decision and tries to say, well, a few more years have passed and nothing's gotten better, so that's enough for specific intent, is it? The Disability Rights International also made that conclusion. They found that the government's violating its own law, federal Mexican law, Convention on the Rights of People with Disabilities, Convention Against Torture, which have been ratified by the Mexican government. Is there a requirement to satisfy the specific intent requirement under CAP that the head of mental health services of the Republic of Mexico sign an affidavit or stand up and say, this happens because we specifically intend it to happen, or is there some lesser form of proof? Under international law, the discriminatory treatment invites the inference of intent, and so I think that's why no one questions the persecutor's motive in cases like FGM or in a case that I mentioned in my opening brief, Pichuskaya, where a lesbian is being involuntarily committed by the government to cure. So the intent is benign to cure this person's sexual orientation. Is it enough if a government regularly and routinely sanctions, approves, or engages in a practice, is that enough? Where there's a discriminatory intent and there's knowledge and the harm rises to the level that it would need to to constitute torture, yes. So to use an international analogy, we're not going to require that Bashar Assad stand up on live television and admit that he used sarin gas against his own citizens? Exactly right, and I think this court has not inquired into the intent of the persecutor where there's a discriminatory intent, and I think that's important. And the government, I think the sort of logical conclusion of the government's position is that FGM, where the perpetrators are doing it for benign reasons, is not torture, because they're not specifically intending... Let's assume this case goes back, or assume for the purpose of my question, the case goes back and it goes back to the IJ to apply the specific intent requirement. What's the nature of the additional proof that you would put on, or would you simply rely upon the record in saying what's in the record amounts to specific intent? I think the record is clear that there's specific intent. I think under the substantial evidence standard of review, I think the record compels the conclusion that was reached by the IJ. That doesn't answer the question. Does that mean that if it went back to the IJ because a determination were made that there wasn't a sufficient specific intent standard, you would simply rely on the record as is, or would there be additional evidence? I mean, you know, we always gather additional evidence if it's available, but I think the record is sufficient as it stands. Can you show me in the IJ's opinion the finding on specific intent? So the IJ basically distinguishes VAGUS from the current case. Would you like me to actually pull that? Well, yes, because I read that. I know that the IJ distinguished, but I'm not seeing the actual language of specific intent. So beginning at administrative record 90. Correct. I mean, there the IJ talks about the likelihood of them coming to the pension. That's one point, and then the IJ goes on about the horrendous conditions in Mexico. Okay, and then at 93, she compares VAGUS explicitly, and she says in VAGUS the court held that the atrocious conditions were due to negligence. And then she goes on 94, she says that these are at the first full paragraph, government workers in government institutions, and the government hasn't done anything about it. Right, so I don't think she says specific intent, and the question is at what point does acquiescence transform itself to specific intent, because she tries to distinguish VAGUS, which says they actually know about it, they try to do better, so it may be acquiescence, it may be knowledge, but this is different now because of the timing. She does say, Your Honor, at 93, this leaves the court to decide one remaining issue, is the Mexican government intending to torture those detained at mental institutions, and she answers that question yes in the next few pages by distinguishing VAGUS. And do you think that, so her conclusion in your view is that it's not negligence, but it's affirmative? The acts are affirmative, it's not people starving because the government doesn't have money, they're using restraints, they're also providing, they're over-medicating people, they're providing medication that costs money, and it's a government policy instituted from above. I think those are the, and the government is doing it ten years later after massive international publicity about the conditions in these institutions, nothing has changed. Our government calls them human rights abuses in the State Department report at 518. They say, it notes the DRI reports and says, you know, these are widespread human rights abuses in mental institutions around the country, including the use of physical and chemical restraints and lobotomies on patients. So psychosurgery as well, you know, expensive procedures. This is not neglect. This is not Haiti not being able to afford to feed the prisoners, and I think the IJ clearly distinguishes Viegas on the knowledge of the government and sanctioning of the government rising to the level of intent. This court normally would remand. You might want to save any remaining time. Good morning, Your Honors. May it please the court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. The court should affirm the decision of the Board of Immigration Appeals because the Board did not engage in impermissible fact-finding when it made its specific intent finding. As Your Honor indicated earlier, it merely applied the faxes found by the immigration judge to the legal standard for specific intent and found that those fax did not meet that correctly applied legal standard. Well, but that's a degree of fact-finding. It didn't accept the fax found by the immigration judge. It started by saying to reach the conclusion reached by the immigration judge, you have to have this chain of events, and we don't believe that's all going to happen. And I didn't see any place in that discussion an expression that the standard applied was clearly erroneous. With regard to the portion of the Board's decision with regard to the more likely than not finding, we're not conceding error on that, but we focused our briefing on the issue of specific intent and the Board's finding in that regard, as that is the dispositive issue. And with regard to that, the Board did not engage in improper fact-finding. The Board accepted it as true. Well, it's the same pure premise that the Board is saying this isn't the right standard. Rather than send it back to apply the right standard, it went ahead and applied what it thought was the standard to the fax it thought it identified. You're not arguing on the first part, which is maybe the weak foundation here, it seems to me, because unless the Board is allowed to decide what fax it's going to use to apply the right standard, the Board's in the business of fact-finding, isn't it? The issue of more likely than not and specific intent are two totally separate issues, and just focusing on the specific intent finding, the Board did accept all the findings the immigration judge made as true. It accepted the fact that perhaps the conditions in the Mexican institutions are severe enough that they constitute severe suffering and pain, and that the Mexican government is aware of those conditions, and that the Mexican government has not done anything to improve those conditions. The Board did accept those as true and then applied those facts to the correctly stated legal standard for specific intent. You see, the difficulty I have with that is what the Board is saying is, well, there is other evidence, such as the government's openness to investigating the conditions. That confirms our conclusion that the poor conditions don't result from intent, but that seems to me to be weighing the facts. It's adding new facts and saying, but I look at those, or we the Board look at those, and we're more persuaded by that one. That's a re-weighing of the facts directly, isn't it? I would suggest that even taking that final sentence out of the decision, the Board's analysis in its preceding sentences in that paragraph is sufficient on its own to uphold the finding that there's no specific intent shown on behalf of the petitioner. The conclusion of openness to investigation and lack of will to improve is just, in my view or in the government's view, just a substantiation of the facts applied to the law. Well, it says here the respondent has not shown that the Mexican officials created the conditions. That's just flat wrong.  I mean, what's the basis for that? I'm sorry, I'm looking at ER 5, that paragraph you were referring to, before they come to the conclusion about openness to investigation and specific intent. Before that it says, the respondent has not shown that Mexican officials created the conditions. But then they go on to say that they had. Is that accurate or not accurate? I mean, the conditions are there and they are created. And who created them? The Mexican government. So that's just flat wrong. Well, isn't it? Is there any basis for that statement? Or allow the conditions to continue. Is there any evidence that the Mexican government has not allowed the conditions to continue? I mean, I think the board is saying that they do believe that they've allowed the conditions to continue by not instituting changes, but that still in and of itself is not sufficient to show specific intent. You still need to have those conditions in place or continue to have those conditions in place with the specific intent of maintaining those conditions for the deliberate purpose of inflicting harm. And the board, based on the facts found by the IJ, did not find that those. But the board doesn't talk about the IJ's facts and say, by clear and convincing or some other standard, these facts are wrong. So in other words, if you take all of the IJ's facts and accept them as true, the BIA, it seems to me, hasn't dealt with them. If, on the other hand, you actually say, well, what the BIA is doing is adding new facts, then it's also weighing facts. So either way, the BIA didn't come to the nub of the problem, it seems to me. I still think reading that paragraph in its entirety, even though the board didn't say, I don't think there was a need for the board to say clear error, because the board didn't find error in the immigration judge's findings. It seems to me that the board did accept the immigration judge's findings as true and applying those facts as found to the legal standard, found it insufficient. Well, why is the finding, let's assume from the moment we read the IJ's decision as including it found it. It recited a finding of intent, not a finding of specific intent. I'm not sure there's a meaningful difference there. So we take the IJ. It decides based on her reading of the evidence in front of her and her citation to our court's decision, which said that wasn't enough. Okay, based on what I've seen in the years since, that's enough. I make a finding that the Mexican government acted intentionally. That's not a finding that pertains to the particulars of the petitioner in this case. It's a more generic finding with regard to what the government of Mexico is doing in its mental institutions. But why isn't that a factual finding to which the clearly erroneous standard should apply? To answer your question, this court has said in detail that intentions and states of minds are factual findings, but the tricky issue here with specific intent, it's somewhat factual and also legal. And to go back a little bit, I don't think the immigration judge in her decision made actual findings with regard to specific intent. My reading of the decision is just the Mexican government's knowledge and then their inaction. And knowledge plus inaction does not equal a specific intent to institutionalize patients with the deliberate idea to inflict torturous conduct on them. In that case, wouldn't the remedy for the BIA, if the BIA says, well, you didn't actually address, in our view, specific intent, isn't the remedy there to remand because the intent findings are factual? If we take your theory. Remand to the IJ, from the BIA to the IJ. The board could have, but any error in the application of law, the board cured by applying it. Applying it itself. But then it made its own findings. But then to remand it back to the IJ for additional fact finding was unnecessary because the case is basically controlled by VIEGAS. There's really no evidence of specific intent. Well, the IJ cites VIEGAS, says look at what's happened since, and says, and this is on AR-95, the Mexican government reached their duty to act, thereby intentionally inflicting torture on the mentally ill. Now, you can argue that because it doesn't pertain to this particular party, it is a more generic evaluation that includes some element of what does it mean to intend. But at least in terminology, that has a factual sound to it. Courts determine intent all the time based on evidence short of somebody standing up like Perry Mason and saying I did it and I meant to. So if that is a factual finding, the board may fairly say, but that didn't apply the right standard for what constitutes intent. What permits the board to go on from that point and say, we're going to decide for ourselves based on our factual assessment, which includes some things on the first part of the case that suggests the board's grasp of this case may not be perfect, as I'm looking at it, what permits the board at that point to say, well, he used the wrong standard or she used the wrong standard, so we're going to apply the right standard. Isn't that a fact finding step that should be conducted by the IJ? Again, the issue of specific intent is kind of tricky because intentions have been found to be factual determinations, but also the idea of specific intent for purposes of the torture definition, it's a legal question. And I take that. What I'm saying is once the board has decided the IJ here didn't get the legal definition of intent right, the question becomes, then what? And you're telling us the board itself can apply the right standard, and I'm asking, but isn't that inherently a factual assessment as well? Which goes to why they shouldn't have remanded at a minimum back to the IJ. You're correct that it's a factual and legal determination, but I don't think remand to the board was necessary or remand to the IJ was necessary because, again, my reading of the board's decision in conjunction with the IJ's decision is that the board didn't independently make factual determinations. It relied on what the immigration judge found but just found those legally insufficient when applying the correct legal standard that remand wasn't necessary and that remand wasn't necessary for the IJ to apply the correct legal standard and remand wasn't necessary for additional fact-finding given that the findings stated in the IJ's decision really, in my view, mimic what Viega says. And absent something additional, it doesn't amount to specific intent. So give us an idea. I mean, you're from EOIR? DOJ. DOJ, and you regularly do immigration cases? Yes. Give us an idea of what kind of proof would rise to the level of specific intent short of the president of the country saying so. To answer your question, first of all, it needs to be something more than awareness and inaction. It needs something additional. And, for example, in the Radar case How about a respected international body repeatedly pointing to human rights violations in this regard? Is that enough? No, it's not. I mean, for example, in the Radar case, it was suggested that for a sufficient finding of specific intent that when the government of Haiti hires human rights abusers to work in prisons, that it can be reasonably inferred, and the IJ made the specific intent finding in that case, that because they're hiring human rights abusers to work in prisons, that it's reasonable to think that they're hiring to do so because they will commit human rights abuses against prisoners in those prisons. That, I think, is a type of evidence or proof that could show specific intent. Here, there's nothing like that. In addition, in the Radar case, the IJ found that the government of Haiti allows tuberculosis and other illnesses to run rampant and purposely doesn't provide treatment for those illnesses with the intent to decrease the criminal element in the prison population. That is another piece of potential evidentiary proof. It's not enough to simply show that something happens over and over and over and over again. I mean, I don't know. In the Radar case, too, they showed the conditions worsened. Here, you still have the same conditions and just government in action. They're still horrible. They're still horrible, but to find this case to be sufficient to make the specific intent finding, it's almost tantamount to saying any government in the world who doesn't fix the problem are specifically intending to hurt people in their prisons or in their hospitals or in their institutions. It sounds to me like the Attorney General is confident that if this case goes back, they can establish a lack of specific intent. I don't think you need to show lack of specific intent. The burden is on the petitioner to show the specific intent. You're confident that the petitioner will be unable to amass any amount of proof that will satisfy specific intent. Yes, Your Honor, and part of my argument is that remand is unnecessary because viewing the record as a whole, there's nothing in the record, just like in the Villegas case, that shows any type of specific intent on the part of the Mexican government to deliberately harm patients in mental institutions in Mexico. So, yeah, basically at the end of the day, a reading of this and the evidence, remand is not necessary if the court were to find that the board did engage in improper fact-finding because the case is really squarely controlled by the Villegas case. Thank you. Thank you. You've used all your time. I'll give you a minute for rebuttal. Your Honor, it's simply not true that the board did not engage in fact-finding with respect to the specific intent conclusion. The record's clear. The case should not be remanded because the board was on notice about the standard of review issue three years ago in Brasilia and the BIA engaged in improper fact-finding, the court found. I want to make the point that Mr. Olivar, after winning his case … Wait a minute. The board used the wrong standard doesn't mean the board isn't entitled to apply the right standard, is it? I mean, I don't understand how your assertion connects that the case shouldn't be remanded for the board to do anything other than accede to what the IJ said. Your Honor, three years ago when this decision issued in March 2012, three years before that Brasilian was issued by this court, Mr. Olivar's been detained the entire time. His mental health has deteriorated. We documented that in his motion to expedite. The issues in Rodore are nearly identical to the present case. By the time the government wrote its reply brief, five circuits, including this circuit, had overruled the board on the standard of review issue. Still, the government continued to argue that the board had not erred by looking at the issue de novo. The government never moved to remand as they did in, for example, Rodriguez v. Holder. A remand for complete reconsideration by the board would amount to a free motion to reopen two bites at the apple where the government continues to make the same arguments that have been overruled by this court. And it would mean another year of detention for Mr. Olivar at minimum. Thank you. Thank you. Case just argued as submitted, Olivar v. Holder.
judges: Hawkins, McKeown, Clifton